FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ SEP 20 2012 ★
BROOKLYN OFFICE

D/P

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DWAYNE WHAUL,

                       Petitioner,

    -against-

PATRICK GRIFFIN, Superintendent, Southport
Correctional Facility,

                       Respondent.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**10-CV-2772 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

    Dwayne Whaul brings this pro se Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, attacking his state-court convictions in 2006 for manslaughter, criminal possession of a weapon, and reckless endangerment. He argues: (1) that he received ineffective assistance of counsel; (2) that the trial court improperly restricted his cross-examination of a witness; (3) that the trial court improperly failed to suppress a statement he made in police custody absent a <u>Miranda</u> warning; (4) that the trial court improperly denied trial counsel the ability to call a witness during a suppression hearing; and (5) that the Appellate Division abused its discretion in denying his application to file a supplemental brief during his direct appeal. For the reasons set forth below, Whaul's Petition is DENIED.

**I.    BACKGROUND**

    **A.    Facts**

    The trial record shows that on May 11, 2004, at approximately 5:30 p.m., Ryan Anthony Boyce Phillips ("Boyce") saw his friend Melvin Rose walking on the street and picked him up to drive him home. (Trial Tr. (Docket Entry # 5-2) at 56.) During the drive to Rose's home, Rose

spoke with a man in a black Acura that had stopped adjacent to the car. (Id. at 60.) Boyce later testified that the man in the Acura was Whaul, whom Boyce knew as "Many Lumps." (Id. at 56-57.)

Boyce then drove to Rose's house and came to a stop in front of the house; shortly thereafter, the black Acura pulled up behind him. (Id. at 61.) Boyce heard a shot fired and he ducked, looked into the mirror, and then drove off from Rose's house. (Id.) Boyce testified that he saw Whaul standing outside of the Acura, with a gun in hand, firing another shot in the car's direction. (Id. at 61-62.)

The black Acura then began to chase Boyce's vehicle. (Id. at 62-63.) Boyce had to step on his brakes to avoid hitting another car, and his vehicle slid into a tree. (Id. at 64.) He jumped out of his car's driver-side window and began to run away, at which point he saw the black Acura pull up to the passenger side of his vehicle and heard two more shots fired. (Id.) Melvin Rose was later found dead in the passenger-side seat of Boyce's vehicle. (Trial Tr. (Docket Entry # 5-3) at 184.) A medical examiner testified that Rose's death was caused by a bullet that had entered the left side of Rose's head, causing multiple brain injuries. (Id. at 175-78.)

Based on a series of phone records and information provided by an informant, Detective John O'Dwyer of the Brooklyn South Homicide Squad of the New York Police Department ("NYPD") tracked Whaul's travel to Maryland, and subsequently to Miami International Airport. (Trial Tr. (Docket Entry # 5-4) at 357-60.) Detective O'Dwyer then contacted the Miami-Dade Police assigned to the airport and asked them to take into custody a man traveling under the name of Dwayne Whaul or Philip Lowery, a suspected alias. (Id. at 360.)

Detective Luis Perez of the Miami-Dade police identified Whaul as he was boarding an airplane traveling to the Dominican Republic, traveling under the alias of Philip Lowery. (Id. at

290-91.) Detective Perez detained Whaul and escorted him from the plane to a police vehicle, which was to drive Whaul to the police station to await transport back to New York by NYPD personnel. (Id. at 292-94.) Detective Javier Prellezo was also in that vehicle. (Id. at 318.) Detective Perez found on Whaul's person a Virginia license, a Maryland birth certificate, and a Social Security card all in the name of Philip Lowery. (Id. at 295.)

Whaul was not read his Miranda rights at any point on the plane or tarmac, nor while he was in the vehicle. (Id. at 308-10.) Detective Perez testified that, while in the vehicle, Whaul asked why he was being detained, and that both Detective Perez and Detective Prellezo responded that Whaul should remain silent and wait for NYPD personnel. (Id. at 309, 318.) After Whaul asked a few more times why he was being detained, Detective Perez told Whaul that he had been arrested for a warrant in reference to a homicide in New York. (Id. at 310-13.) Whaul remained silent for a period of time, and then stated: "I did him because he wanted to kill me. I don't deserve to go to jail. I prefer to be dead rather than go to jail." (Id. at 294, 314.) Detective Perez made a notation of this statement on an envelope, but the envelope was never delivered to Detective O'Dwyer, and Detective Perez later testified that it was missing. (Id. at 316-18, 321.)

Detective O'Dwyer traveled to Miami to help transport Whaul back to New York. (Id. at 360-61.) Upon Whaul's arrival in New York, Detective Roy Stroessenreuther conducted a lineup that included Whaul, and Whaul was identified by Boyce. (Hearing Tr. (Docket Entry # 5-2) at 30-33.) Thomas LaPierre, another witness of the crash and the shooting, was presented with the same lineup but did not identify Whaul. (Id. at 33-34.)

3

### B. Trial Court Proceedings

Whaul was charged in New York Supreme Court, Kings County, with second-degree murder, first-degree attempted assault, first-degree reckless endangerment, second-degree criminal possession of a weapon, and third-degree criminal possession of a weapon. (Eisner Aff. ¶ 11.)

Prior to trial, the court held a suppression hearing to determine the admissibility of both Whaul's confession and the lineup identification. The court agreed with Detective Perez's characterization of Whaul's confession as a spontaneous statement and, consequently, held that Whaul's confession was admissible even though no Miranda warning had been given. (Eisner Aff. ¶ 12.) Defense counsel sought to call Detective Prellezo to help determine whether Whaul had actually made the confession as Detective Perez described. (Hearing Tr. at 77.) The court denied the defense's request, finding that it would be unnecessary for Detective Prellezo to testify in light of Detective Perez's testimony. (See id. at 77-80; Eisner Aff. ¶ 12.) The court also held that Boyce's lineup identification was admissible. (Eisner Aff. ¶ 12.)

Whaul's jury trial began on December 1, 2005. (Trial Tr. (Docket Entry # 5-2) at 1.) Among others, the prosecution called Boyce as a witness, who identified Whaul as the shooter. (Id. at 61-62.) On cross-examination, defense counsel characterized Boyce as a repeat offender who had misidentified Whaul. (Id. at 88-91, 119-21, 127-28.) Trial counsel questioned Boyce on some of his prior charges but was not permitted to examine in detail two charges to which Boyce had pled guilty in 2001 and 2002. (Trial Tr. (Docket Entry # 5-3) at 101-04.)

On December 13, 2005, a jury convicted Whaul of first-degree manslaughter as to Rose, first-degree reckless endangerment as to Boyce, and second-degree criminal possession of a weapon, and acquitted him of second-degree murder as to Rose and first-degree attempted

4

assault as to Boyce. (Trial Tr. (Docket Entry # 5-5) at 535-36.) Whaul was sentenced to concurrent terms of twenty-five years' imprisonment for the manslaughter conviction, fifteen years' imprisonment for the weapons possession conviction, and seven years' imprisonment for the reckless endangerment conviction. (Sentence Tr. (Docket Entry # 5-5) at 20.)

C.  **Direct Appeal**

In December 2008, Whaul appealed his judgment of conviction to the New York Supreme Court Appellate Division, Second Department. (Eisner Aff. ¶ 20.) Whaul argued: (1) that trial counsel was ineffective (Def. App. Br. (Docket Entry # 5-6) at 17-23); (2) that the trial court had erred in curtailing counsel's cross-examination of Boyce (id. at 24-27); (3) that the trial court had erred in refusing to suppress Whaul's alleged statement to Detective Perez (id. at 27-31); and (4) that the trial court had erred in denying trial counsel the opportunity to call Detective Prellezo (id. at 31-34). Whaul also wrote to the Appellate Division on December 28, 2008, seeking leave to file a pro se supplemental brief; his request was denied. (Ex. C to Eisner Aff. (Docket Entry # 5-6).)

On June 30, 2009, the Appellate Division affirmed Whaul's judgment of conviction. People v. Whaul, 63 A.D.3d 1182, 1182 (N.Y. App. Div. 2d Dep't 2009). The court concluded that, "[v]iewing the record as a whole, Whaul received meaningful representation," finding that "[d]efense counsel prepared and pursued trial strategies and defense theories, presented a clear and cogent summation, and adequately cross-examined the People's witnesses to develop his defense theories." Id. at 1183. While the court also concluded that the trial court had erred in precluding further cross-examination of Boyce, the court held that "this error was harmless" and that there was "no significant probability that the error contributed to his conviction." Id. The court affirmed the trial court's denial of Whaul's motion to suppress his spontaneous statement

to Detective Perez, despite the lack of a Miranda warning, because the statement was "not triggered by any police questioning or other conduct which reasonably could have been expected to elicit a declaration from him." Id. (internal quotation marks omitted). Finally, the court concluded that, because Whaul's request for Detective Prellezo to testify at his suppression hearing did not "demonstrat[e] that the witness might provide material, noncumulative evidence," the suppression-hearing court had "providently exercised its discretion in denying [his] request." Id. Whaul was denied leave to appeal to the New York Court of Appeals. People v. Whaul, 13 N.Y.3d 864 (2009).

D.   **Petition for Writ of Habeas Corpus**

On June 11, 2010, Whaul submitted the instant Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. (Pet. (Docket Entry # 1).) He asserts five claims: (1) that he received ineffective assistance of counsel, in violation of the Sixth and Fourteenth Amendments; (2) that the trial court improperly restricted his cross-examination of Boyce, in violation of the Sixth and Fourteenth Amendments; (3) that the trial court improperly failed to suppress his statement to Detective Perez, in violation of the Fifth and Fourteenth Amendments; (4) that the trial court improperly refused trial counsel's request to call Detective Prellezo during Whaul's suppression hearing, in violation of the Sixth and Fourteenth Amendments; and (5) that the Appellate Division abused its discretion in denying his application to file a supplemental brief during his direct appeal, in violation of the Fourteenth Amendment. (Id. at 2-6.) Respondent submitted a memorandum of law in opposition to the Petition (Resp. Opp'n (Docket Entry # 5)) and Whaul replied (Pet'r Reply (Docket Entry # 6)).

## II.  HABEAS CORPUS STANDARDS

A district court is empowered to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), established a deferential standard of review that federal courts must apply when reviewing a claim in a habeas corpus petition that was adjudicated on the merits in state court proceedings. AEDPA provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was *contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States*; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[1]

Id. § 2254(d) (emphasis added); see also Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005); see also Greene v. Fisher, 132 S. Ct. 38, 44 (2011) (explaining that § 2254(d) review must be based on the Supreme Court's "precedents as of the time the state court renders its decision" and "the record that was before the state court" at that time (internal quotation marks and emphasis omitted)). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than

---

[1] Whaul relies upon § 2254(d)(1) alone as the basis for his Petition. (See Pet. Reply at 2-6.)

[the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. The question is "not whether the state court was *incorrect or erroneous* in rejecting [petitioner's] . . . claim, but whether it was *objectively unreasonable* in doing so." Ryan, 303 F.3d at 245 (alteration in original) (internal quotation marks omitted). The petition may be granted only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with the [the Supreme] Court's precedents." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

Whaul argues that his trial counsel provided ineffective assistance, in violation of the Sixth Amendment as applied to the states through the Fourteenth Amendment. (Pet. at 3.) The Appellate Division rejected this claim because "[d]efense counsel prepared and pursued trial strategies and defense theories, presented a clear and cogent summation, and adequately cross-examined the People's witnesses to develop his defense theories." Whaul, 63 A.D.3d at 1183 (internal quotation marks omitted). This conclusion was not contrary to, nor an unreasonable application of, clearly established federal law.

Ineffective assistance of counsel claims are governed by the Supreme Court's holding in Strickland v. Washington, 466 U.S. 668 (1984). See Williams, 529 U.S. at 390. In Strickland, the Court established a two-prong test to determine whether a defendant's Sixth Amendment right to effective assistance of counsel has been violated.

8

First, under Strickland's "performance" prong, a petitioner must show that trial counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms." Strickland, 466 U.S. at 687-88. "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 690). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Thus, a court must "not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a significant potential downside," or if the lawyer otherwise had "a reasonable justification for the decision." Greiner, 417 F.3d at 319 (internal quotation marks omitted).

Second, under Strickland's "prejudice" prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding"; rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 693-94.

Establishing a claim for ineffective assistance of counsel is a "heavy burden" that, in the context of a § 2254 petition, is "enhanced by the added hurdle posed by the highly deferential review accorded state court adjudications under [AEDPA]." Eze v. Senkowski, 321 F.3d 110, 112 (2d Cir. 2003); see also Harrington, 131 S. Ct. at 788 ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly

9

so." (internal quotation marks and citation omitted)). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly"; instead, the petitioner must show that the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002) (citation omitted). "And, because Strickland's is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 112 (2009).

Whaul asserts four grounds for ineffective assistance: that trial counsel (1) improperly suggested during Boyce's cross-examination that the shooting may have been committed by a third party in self-defense; (2) "confirmed" Boyce's testimony about Whaul's street name, "Many Lumps"; (3) failed to request an adverse inference charge concerning the supposed loss by the Miami police of a handwritten note Detective Perez made at the time of Whaul's alleged confession; and (4) failed to call Thomas LaPierre as a witness, who had been unable to identify Whaul in a lineup. (Pet. at 3.) The court will address these arguments in turn.

1. Self-Defense Theory

Trial counsel's central defense theory was that Boyce had inadvertently misidentified Rose's murderer; he suggested that Boyce could not see the shooter clearly through the tinted windows in his vehicle and focused on the difficulty two other witnesses had in identifying the murderer.[2] (Trial Tr. (Docket Entry # 5-3) at 127-28.) But counsel also suggested during his cross-examination of Boyce that Boyce had *purposefully* misidentified Whaul as the shooter in order to conceal the fact that Boyce had been responsible for the shooting—specifically, that

---

[2] Maudrie Rose, Melvin Rose's mother, and Thomas LaPierre both witnessed the crash and shooting, but neither was able to identify the shooter. (See Trial Tr. (Docket Entry # 5-2) at 40-43; Trial Tr. (Docket Entry # 5-3) at 228-29.)

Boyce had instigated an altercation with an unidentified third party and that this third party shot Rose when returning fire upon Boyce in self-defense. (See Trial Tr. (Docket Entry # 5-3) at 146 (asking whether Boyce was "here to testify that it was Dwayne Whaul that shot [his] friend, Melvin Rose . . . [r]ather than [Boyce who] shot an individual who returned fire striking Melvin Rose"); id. at 147 ("I am saying to you, sir, that [Rose] was killed because you fired shots at an individual who returned fire at your vehicle, isn't that correct?").) Whaul argues that there was "no evidentiary support" for this line of questioning and that the questions "undermined the defense on which counsel relied in his summation"—i.e., the central theory of inadvertent misidentification. (Pet. at 3.)

The court disagrees. For one thing, there was indeed some evidentiary support for counsel's questioning; Boyce was known to possess guns (Trial Tr. (Docket Entry # 5-2) at 90-94), had faced charges for possession of guns in the past (id.), and had fled the scene immediately after crashing his car (id. at 45, 64; Trial Tr. (Docket Entry # 5-3) at 134-35). From these facts, counsel could reasonably have pursued a theory that Boyce deliberately misidentified Whaul in order to escape prosecution for his own role in Rose's death. Moreover, counsel's deliberate misidentification theory did not necessarily undermine his inadvertent misidentification theory. Rather, these theories—both of which are premised on the idea that Boyce misidentified Whaul—were reasonably presented as plausible alternatives. Cf. Moore v. Scully, 956 F. Supp. 1139, 1151-52 (S.D.N.Y. 1997) (finding that counsel acted reasonably by positing alternative arguments in an attempt to best represent her client).

## 2. Confirmation of Whaul's Street Name

Next, Whaul argues that counsel improperly "confirmed [Boyce's] testimony about [Whaul's] street name ['Many Lumps']." (Pet. at 3.) He is wrong.

During summation, counsel made the following statement regarding Boyce:

> He then returns to the scene. He lays down and that's when he gives the police my client's street name, not a description, not a description male black, 5'11, 120, wearing glasses, green shirt, green pants, Air Jordan sneakers. No description. And, naturally, the police then focus upon my client: Dwayne Whaul.

(Trial Tr. (Docket Entry # 5-4) at 446-47.)

Contrary to Whaul's suggestion, counsel did not "confirm" his street name; he merely emphasized *Boyce's* identification of Whaul by a street name in order to further his theory of misidentification, suggesting to the jury that because Boyce identified Whaul by a street name instead of describing his physical characteristics, his identification was both incorrect and self-serving. (Id.) The court finds nothing problematic about this strategy.

Moreover, even if this court were to infer from counsel's use of the phrase "my client's street name" that Whaul's street name had been "confirmed," Whaul's Strickland claim would nonetheless be insufficient. Whaul does not dispute that his street name was in fact "Many Lumps," and thus has provided no reason for the court to conclude that counsel's "confirmation" was either professionally unreasonable or had a significant adverse effect on Whaul's defense.

## 3. Failure to Request an Adverse Inference Charge

Whaul's third ineffective assistance argument is that trial counsel was ineffective for failing to request an adverse inference charge when Detective Perez was unable to produce the note on which he supposedly transcribed Whaul's confession. (Pet. at 3.) Because Whaul cannot establish that, but for the lack of an adverse inference charge, the outcome of his trial

would have been different, this claim fails <u>Strickland</u>'s prejudice prong. See <u>Strickland</u>, 466 U.S. at 694.

Although Whaul does not make clear the content of the adverse inference charge he claims counsel should have sought, a typical charge in this situation would be to instruct the jury that it could (but need not) infer, based on the prosecution's failure to produce the note, that the note would not support, and might even contradict, Detective Perez's testimony. See, e.g., <u>Williams v. Bradt</u>, No. 10-CV-0790 (MAT), 2012 WL 566818, at *15 n.7 (W.D.N.Y. Feb. 21, 2012) (describing a typical adverse inference charge under similar facts). Under New York law, in order to be entitled to an adverse inference charge, the party seeking the charge must demonstrate either (1) prejudice resulting from the failure to produce the document at issue or (2) that the opposing party destroyed the evidence in bad faith. See <u>People v. Smith</u>, 33 A.D.3d 462, 463 (N.Y. App. Div. 1st Dep't 2006) (citing <u>People v. Martinez</u>, 71 N.Y.2d 937, 940 (1988)); <u>People v. Brister</u>, 239 A.D.2d 513, 514 (N.Y. App. Div. 2d Dep't 1997).

Assuming *arguendo* that counsel should have requested an adverse inverse charge—and that the trial court would have granted it—there is no reasonable probability that such a charge would have changed the outcome of Whaul's trial. Even apart from Whaul's confession, the evidence against him was extensive; Boyce identified Whaul as the shooter and the driver of the black Acura (Trial Tr. (Docket Entry # 5-2) at 56-57, 61); Whaul switched cars with a man named Davion John—leaving his black Acura and retrieving his green Infiniti—shortly after the time of the altercation and then drove to Maryland (Trial Tr. (Docket Entry # 5-3) at 260-63); Whaul left his Infiniti in Maryland and then traveled to Miami where he boarded a plane to the Dominican Republic using an assumed name (Trial Tr. (Docket Entry # 5-4) at 358-60). In light of all this evidence, and given the permissive nature of an adverse inference charge to the jury,

13

Whaul cannot satisfy the Strickland prejudice prong based on counsel's failure to request an adverse inference charge. Cf. Bradt, 2012 WL 566818 at *16 (concluding that, in light of the "evidentiary backdrop, there [wa]s no reasonable probability that the jury would have rendered a more favorable verdict had an adverse inference charge been given by the trial court").

4. Failure to Call Thomas LaPierre

Finally, Whaul argues that trial counsel provided ineffective assistance by failing to call Thomas LaPierre, an eyewitness to the crime who was unable to identify Whaul at his lineup. (Pet. at 3.) In his brief to the Appellate Division, Whaul contended that calling LaPierre would have demonstrated that he was not the shooter. (Def. App. Br. at 22.)

One thing does not follow from the other; LaPierre may have been unable to identify Whaul simply because he was unable to see the shooter clearly on the night of the crime. At the same time, counsel might have been reasonably concerned about the danger that LaPierre—despite being unable to identify Whaul in a lineup—would have made an in-court identification at trial. Counsel's decision not to call LaPierre was therefore within the "wide range of reasonable professional representation." United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987) (noting that trial counsel's decision not to call certain witnesses "fall[s] squarely within the ambit of trial strategy, and, if reasonably made, will not constitute a basis for an ineffective assistance claim"); Aponte v. Scully, 740 F. Supp. 153, 158 (E.D.N.Y. 1990) (stating that "[c]omplaints of uncalled witnesses are not favored in federal habeas review" and that there is a "strong presumption" that counsel's decisions on these matters are reasonable).

* * * * *

In sum, the court finds that each of the actions Whaul faults his trial counsel for taking were within the wide range of professionally reasonable conduct, and counsel was not ineffective

14

whether the court looks at these actions individually or cumulatively. Cf. Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001) (considering errors made by trial counsel "in the aggregate"). At the very least, the Appellate Division's rejection of Whaul's ineffective assistance claims was not an unreasonable application of Strickland. See 28 U.S.C. 2254(d)(1).

## B. Restriction of Cross-Examination

Next, Whaul argues that his Petition should be granted on the grounds that the trial court improperly restricted his cross-examination of Boyce, in violation of the Confrontation Clause of the Sixth Amendment as applied to the states through the Fourteenth Amendment. (Pet. at 4.) The Appellate Division concluded that the trial court erred in restricting trial counsel's cross-examination, but that this error was harmless in light of the "overwhelming evidence of [Whaul's] guilt." Whaul, 63 A.D.3d at 1183. The court need not decide whether Whaul has established a Confrontation Clause violation because any such violation was harmless.

On collateral review of a state-court criminal judgment, this court applies the harmless error standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993), which inquires "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" Id. at 637 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)); see also Fry v. Pliler, 551 U.S. 112, 120-22 (2007) (holding that, in § 2254 proceedings, the Brecht standard of "substantial and injurious effect" applies to determinations of the prejudicial impact of constitutional error and that it subsumes the usual AEDPA inquiry that would ask whether the state court's determination of harmlessness was itself unreasonable). This inquiry must be based on the record as a whole." Brecht, 507 U.S. at 638.

The trial court did indeed limit counsel's examination of Boyce's prior criminal history; it permitted questioning only on Boyce's charges of gun and marijuana possession and not on his

charges for assault and menacing. (Trial Tr. (Docket Entry # 5-3) at 101-03.) But Whaul does not explain how further discussion of Boyce's misconduct, beyond his gun and marijuana charges, would have affected the verdict. Whaul says that the prosecution's case "would have been severely undermined" by impeachment of Boyce's testimony (Pet. at 4), and that may very well be true, but the court does not agree that further questioning on Boyce's past offenses would have significantly impeached Boyce's testimony beyond the impeachment resulting from the discussion of the more recent charges. Particularly in light of the significant evidence supporting Whaul's conviction—including his spontaneous confession—any error with respect to the cross-examination of Boyce did not have a "substantial and injurious effect" on the outcome of this case. Brecht, 507 U.S. at 637. Whaul is therefore not entitled to habeas relief on this basis.

### C. Failure to Suppress Spontaneous Statement

Whaul argues that the trial court erred in failing to suppress his confession because it was made without the warnings set forth in Miranda v. Arizona, 384 U.S. 436 (1966). (Pet. at 4.) The Appellate Division held that the trial court correctly determined that Whaul's statement was spontaneous and therefore admissible. Whaul, 63 A.D.3d at 1182-83. This conclusion was not contrary to, nor an unreasonable application of, clearly established federal law.

"Miranda set[s] forth rules of police procedure applicable to 'custodial interrogation.'" Oregon v. Mathiason, 429 U.S. 492, 494 (1977). "[C]ustodial interrogation [ ] mean[s] questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. Not "all statements obtained by the police after a person has been taken into custody are to be considered the product of interrogation." Rhode Island v. Innis, 446 U.S. 291, 299 (1980). Rather, "the definition of interrogation can extend only to words or actions on the part of police officers that they *should*

16

*have known* were reasonably likely to elicit an incriminating response." Id. at 302. "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by" Miranda's holding. Miranda, 384 U.S. at 478.

Although Whaul was indisputably in custody at the time of his confession, the court agrees with the Appellate Division's conclusion that this confession was spontaneous and not the product of interrogation. According to Detective Perez's testimony, Whaul asked why he was under arrest, and Detective Perez and Detective Prellezo initially responded by telling Whaul to remain silent. (See Hearing Tr. at 55-56.) Then, after successive inquiries by Whaul, Detective Perez responded that Whaul was under arrest "in reference to a homicide up in New York." (Id. at 65.) After some time passed, and without further prompting from Detective Perez, Whaul stated: "I did him because he wanted to kill me. I don't deserve to go to jail, I prefer to be dead than to go to jail the rest of my life." (Id. at 57.) There is nothing to suggest that Detective Perez's statements were likely to elicit an incriminating response from Whaul; indeed, Detective Perez appears to have been attempting to cut off further conversation. Detective Perez's statement cannot be defined as an interrogation, and Whaul's voluntary confession was therefore admissible. See Innis, 446 U.S. at 302.

### D. Restriction on Calling of Detective Prellezo

Whaul next argues that the trial court erred in preventing him from calling Detective Prellezo at his suppression hearing. (Pet. at 4-5.) Detective Prellezo was the driver of the police vehicle when Whaul was placed in custody by Detective Perez and was present when Whaul made his incriminating statement. (Trial Tr. (Docket Entry # 5-4) at 322.) The trial court declined defense counsel's request to call Detective Prellezo, stating that it was not willing to engage in a "fishing expedition to determine what [Detective Prellezo], in fact, observed."

17

(Hearing Tr. at 78.) The Appellate Division affirmed on the basis that Whaul's "request [to call Detective Prellezo] was not supported by a 'bona fide factual predicate' ... demonstrating that the witness might provide material, noncumulative evidence," and that therefore "the [trial court had] providently exercised its discretion in denying [Whaul's] request." Whaul, 63 A.D.3d at 1183 (citation omitted). This conclusion was reasonable.

The Sixth Amendment "grants a defendant the right to call 'witnesses in his favor,' a right that is guaranteed in the criminal courts of the States by the Fourteenth Amendment." Rock v. Arkansas, 483 U.S. 44, 52 (1987). This right, however, is "not absolute." Ronson v. Comm'r of Corr. of N.Y., 604 F.2d 176, 178 (2d Cir. 1979). Rather, it entitles defendants to call witnesses whose "testimony would have been both material and favorable to his defense." United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982). The trial court retains "'wide latitude' to exclude evidence that is 'repetitive [or] only marginally relevant.'" Crane v. Kentucky, 476 U.S. 683, 689 (1986) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). "Generally, the discretionary exclusion of an identifying witness by a trial judge at a pre-trial hearing does not rise to the level of constitutional error." Duran v. Miller, 322 F. Supp. 2d 251, 257 (E.D.N.Y. 2004) (internal quotation marks omitted) (quoting Sorenson v. Superintendent, 97-CV-3498 (NG), 1998 WL 474149, at *4 (E.D.N.Y. Aug. 7, 1998)).

The trial court denied Whaul's request to call Detective Prellezo because it did not consider Detective Prellezo's testimony to be relevant to the "limited purpose" of the hearing. (Trial Tr. (Docket Entry # 5-2) at 78.) Whaul did not provide the trial court with any reason to conclude that Detective Prellezo's testimony would differ from that of Detective Perez or would otherwise have been of substantial value at the hearing. Indeed, even now Whaul does not

18

explain the basis for his apparent belief that Detective Prellezo's testimony would have changed the outcome of his hearing. There is therefore no basis for habeas relief on this ground.

E.  **Appellate Division's Denial of Leave to File a Pro se Supplemental Brief**

In December 2008, Whaul filed an application for submission of a supplemental brief to the Appellate Division, stating nothing more than a desire to file the brief.[3] (Eisner Aff. ¶ 21.) The State opposed this motion on the grounds that Whaul had "fail[ed] to set forth the grounds he intend[ed] to raise" in his brief. (Ex. C to Eisner Aff.) The State cited § 670.12(h) of the Rules of Practice of the Second Judicial Department of the Appellate Division, which states that "[a] defendant represented by counsel . . . who wishes to file a *pro se* supplemental brief must make an application for permission to do so . . . [that] shall briefly set forth the points that the appellant intends to raise in the supplemental brief." N.Y. Comp. Codes R. & Regs. tit. 22, § 670.12(h). The Appellate Division summarily denied Whaul's application. (Ex. C to Eisner Aff.) Whaul contends that this denial "was arbitrary, an abuse of discretion, and in direct violation of [his] right to due process of law." (Pet. at 5.) He is incorrect.

While a defendant has the right to represent himself in a criminal proceeding, "he has no constitutional or statutory right to represent himself as co-counsel with his own attorney." United States v. Tutino, 883 F.2d 1125, 1141 (2d Cir. 1989); see also Martinez v. Ct. App. of Cal., 528 U.S. 152, 163 (2000) (there is no "constitutional right to self-representation on direct appeal from a criminal conviction"). For similar reasons, "there is no constitutional right to file a supplemental *pro se* brief," and the decision of whether to allow such a filing "rests within the discretion of the [state] court." Farr v. Greiner, No. 01-CR-6921 (NG) (MDG), 2007 WL

---

[3] Whaul's application stated, in its entirety: "Dear Sir: In response to the Brief that was submitted by my attorney Mr. Murray E. Singer. I am requesting permission to submit a supplemental brief. Thank you for your time. Yours truly Dwayne Whaul." (Eisner Aff. ¶ 21.)

19

1094160, at *39 (E.D.N.Y. Apr. 10, 2007); see also Jackson v. Moscicki, No. 99-CIV-2427 (JGK), 2000 WL 511642, at *12 (S.D.N.Y. Apr. 27, 2000) (holding that Appellate Division's denial of motion to file supplemental brief "was plainly within the court's discretion and [did] not constitute the violation of any federal right"). Because the Appellate Division's decision to deny Whaul leave to file a supplemental brief does not implicate federal law, Whaul's claim is not reviewable on a habeas petition. See 28 U.S.C. § 2254(a), (d).

In any event, Whaul gives the court no reason to conclude that the Appellate Division abused its discretion in denying his application. His statement that he "made a 'good cause' showing for wanting to raise [additional] issues" (Pet. at 5) is both entirely conclusory and belied by his actual application for leave, and he does not dispute that his application failed to comply with New York's procedural rules for filing pro se supplemental briefs. The Appellate Division's decision was therefore reasonable.[4]

## IV. CONCLUSION

For the reasons set forth above, Whaul's Petition for Writ of Habeas Corpus is DENIED. Because Whaul has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue. See 28 U.S.C. § 2253(c). The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
September 18, 2012

NICHOLAS G. GARAUFIS
United States District Judge

---

[4] Whaul "request[s] a review by this [ ] Court [sic] to determine whether [his] petition should be held in abeyance while [he is] given an opportunity to exhaust [his additional claims] in the state courts." (Pet. at 5.) Because it was within the Appellate Division's discretion to deny his application to file a supplemental brief, his additional claims are procedurally barred, see Cone v. Bell, 556 U.S. 449, 465 (2009), and thus his request for an abeyance is denied as unnecessary.